IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Katherine Oliver, ) | |
| ) | Civil Action No. 7:15-4759-MGL-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Spartanburg Regional Healthcare ) | |
| System Inc. and Westinghouse Air ) | |
| Brake Technologies Corporation, *doing* ) | |
| *business as* Wabtec Corporation, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on motions to dismiss for failure to state a claim and to stay by defendant Spartanburg Regional Healthcare System, Inc. ("SHRS") (docs. 37, 38). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## PROCEDURAL HISTORY

The plaintiff filed her original complaint on November 30, 2015, alleging that defendant SRHS was liable under Title I of the Americans with Disabilities Act of 1991 ("ADA") because it was an "agent" of her employer, defendant Westinghouse Air Brake Technologies Corporation ("Wabtec"). On January 11, 2016, defendant SRHS moved to dismiss the complaint arguing that it cannot be held liable under Title I as an agent of a plaintiff's employer (doc. 6). On January 19, 2016, the plaintiff filed an amended complaint adding a theory under Title I of the ADA that not only was the defendant SRHS an agent of Wabtec, but that it is also liable under Title I because it was in fact the plaintiff's employer. The plaintiff's amended complaint also added that the defendant SRHS was

liable under Title II of the ADA to the extent it acted as the plaintiff's employer (doc. 9).  On February 2, 2016, the defendant SRHS moved to dismiss the amended complaint (doc. 15).

On February 28, 2016, the plaintiff filed a motion to amend her first amended complaint with the consent of defendant SRHS (doc. 21).  The undersigned granted that motion on March 8, 2016 (doc. 26), and also ruled that the two pending motions to dismiss (docs. 6, 15) were rendered moot by the filing of the second amended complaint, which was filed by the plaintiff that same day (doc. 28).  Defendant SRHS filed a motion to dismiss the second amended complaint on April 1, 2016, and a motion to stay on April 5, 2016 (docs. 37, 38).  The plaintiff filed responses in opposition to the motions on April 18, 2016 (docs. 39, 40), and defendant SRHS filed a reply on April 28, 2016 (doc. 43).   Accordingly, the motions to dismiss the second amended complaint and to stay (docs. 37, 38) are now ripe for the court's consideration.

## PLAINTIFF'S ALLEGATIONS

The plaintiff alleges as follows in her second amended complaint (doc. 28): Defendant Wabtec purportedly made a conditional offer of employment to the plaintiff of a position as a computer numerically controlled ("CNC") operator (*id.* ¶¶ 7-8).  As part of its pre-employment process, Wabtec sends prospective employees to SRHS for pre-employment physicals (*id.* ¶ 4).  During its examination of the plaintiff, SRHS learned the plaintiff had two medical conditions, scoliosis and diabetes (*id.* ¶ 11). Based solely on these disclosures, and without fully evaluating the plaintiff, SRHS imposed disqualifying "restrictions" on the plaintiff that were not reflective of her ability to perform the essential functions of the job offered to her (*id.* ¶ 12).  The plaintiff attempted to provide information to establish that the conditions posed no hurdle to her performing her job functions, but Wabtec refused to consider the information and rescinded its offer of employment (*id*. ¶¶ 13-14).

The plaintiff further alleges that because Wabtec would consider only information provided by SRHS, it effectively ceded to SRHS all control over who would be employed in such situations, and SRHS exercised full control over this function (*id.* ¶ 15). SRHS either followed improper direction from Wabtec to screen out persons with disabilities, or SRHS knew or should have known that any criteria provided by Wabtec was not bona fide, did not accurately reflect job content, and did not account for the defendants' obligations to consider reasonable accommodations to the extent they are necessary (*id.* ¶ 19). The plaintiff alleges that the possibility that SRHS was acting on improper direction from Wabtec to screen out persons with certain disabilities is supported by the fact that the same personnel at SRHS later screened the plaintiff for the same position with a different employer and imposed no restrictions (*id.* ¶ 20).

The plaintiff alleges that defendant SRHS is both an agent of Wabtec (*id.* ¶ 4) and acted as the plaintiff's employer in its own right (*id.* ¶ 27). The plaintiff contends that defendants SRHS and Wabtec "have improperly used the pre-employment medical exam regimen of the ADA to screen out individuals with medical conditions, rather than using it as method to determine whether individuals can perform essential functions with or without reasonable accommodations"; "have maintained one or more policies and practices that violate the ADA and has discriminated against Plaintiff because of her disability and/or Defendant's perception of Plaintiff's conditions and/or Plaintiff's record of impairments, namely her diabetes and scoliosis"; and discriminated against her "on the basis of her disabilities and refused to consider or provide any reasonable accommodation that Defendants could reasonably believe to be necessary to permit Plaintiff to perform the essential functions of the position she was offered" (*id.* ¶¶ 23, 25-26). The plaintiff contends that SRHS's actions violate both Titles I and II of the ADA (*id.* ¶ 27).

3

**APPLICABLE LAW AND ANALYSIS**

*Legal Standard*

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 569 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

***Title I***

Defendant SRHS first argues that it is not subject to Title I of the ADA as the plaintiff's employer or as an agent of her employer, defendant Wabtec (doc. 37-1 at 5-10). Title I of the ADA prohibits a "covered entity" from discriminating against a qualified individual with a disability. 42 U.S.C. § 12112(a). The ADA defines a "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). Further, under the ADA, "[t]he term 'employer' means a person engaged in an industry affecting commerce . . . and any agent of such person . . . ." *Id.* § 12111(5)(A). The language is virtually identical to the definition of "employer" in Title VII of the Civil Rights Act of 1964, as amended. *Id*. § 2000e(b). "There is no significant difference between the definition of the term 'employer' in the two statutes." *Carparts Distribution Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12, 16 (1st Cir. 1994). The ADA prohibits an employer from requiring an applicant to undergo a "pre-employment" medical examination, unless it is focused on "the ability of the applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2); *see* 29 C.F.R. § 1630.14(a) ("Acceptable pre-employment inquiry. A covered entity may make pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions.").

SRHS argues that this District has "directly rejected" the plaintiff's theory that it may be held liable as Wabtec's agent under the ADA (doc. 37-1 at 6-9). SRHS further argues that it cannot be the plaintiff's employer under Title I's definition of "employer" (doc. 37-1 at 9-10). Specifically, SRHS relies on *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925 (D.S.C. 1997). In *Williams*, the Honorable Henry M. Herlong, Jr., (now) Senior United States District Judge, considered a plaintiff's attempt to hold both the staffing company who placed her and the company where she was placed liable as each other's agents under

Title VII. *Id.* at 936.  Judge Herlong noted that "Title VII holds agents of employers liable as employers themselves for discrimination in the workplace." *Id.* at 936 (citing 42 U.S.C. § 2000e-3(b)).  Judge Herlong stated, "This imposition of liability on an employer's agent is 'an unremarkable expression of *respondeat superior*' that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Id.* (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)).  He further noted that the reasoning behind the inclusion of agents in the definition of employer was "intended to impute liability to an employer when one of its employees unlawfully discriminates." *Id.* (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986)).  The court went on to find that neither company was an employee of the other, and they were related only through contracts for staffing.  Thus, "[n]either company exhibited the type of control over the other to invoke liability on a *respondeat superior* basis." *Id.*  Judge Herlong ultimately found that "while each defendant may be liable in their own capacity as employers," the staffing company could not be liable under Title VII as the agent of the company where the plaintiff was placed. *Id.*

Defendant SRHS contends that "[i]nasmuch as Plaintiff alleges that Spartanburg Regional is liable as an agent of Wabtec—the very type of relationship rejected by *Williams*—the [c]omplaint must be dismissed against Spartanburg Regional" (doc. 37-1 at 7).  However, the decision in *Williams*, while persuasive authority, is not necessarily binding on this court as would be a decision from the Fourth Circuit Court of Appeals or the United States Supreme Court. *See South Carolinians for Responsible Gov't v. Krawcheck*, 854 F. Supp.2d 336, 341 (D.S.C. Feb.23, 2012) (noting that decision "from a peer judge within this district" was not controlling).  As argued by the plaintiff, with regard to the status of those entities conducting medical examinations and screening out applicants under the ADA, the decision by the First Circuit Court of Appeals in *Carparts Distribution Center v. Auto. Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994) is more

persuasive. In *Carparts*, an HIV/AIDS patient sued his employer's insurer and its trust under the ADA for an allegedly-illegal exclusion of AIDS-related conditions. The district court dismissed the claims on the grounds that neither defendant employed the plaintiff. The First Circuit reversed: "We believe that the district court erred by interpreting Title I of the ADA to permit suits only against employers who discriminate with respect to the terms and conditions of employment of their own employees." *Id*. at 16. The court noted that "[t]he issue before us is not whether defendants were employers of [the plaintiff] within the common sense of the word, but whether they can be considered 'employers' for purposes of Title I of the ADA and therefore subject to liability for discriminatorily denying employment benefits." *Id*. The First Circuit reversed the dismissal, in part, because the plaintiff was denied the opportunity to develop whether the insurer and trust were agents of the employer, "who act on behalf of the entity in the matter of providing administering health benefits." *Id*. at 17-18.

More recently, in *EEOC v. Grane Healthcare Co.*, 2 F. Supp. 3d 667, 674 (W.D. Pa. 2014), the EEOC sued a management company that recruited and hired the workforce for an employer that had assumed the operations of a nursing home. Prospective employees were subjected to unlawful medical inquiries. *Id*. at 680. Because the defendant was not hiring individuals for its own operations, it challenged the EEOC's ability to sue it as an employer, and it raised the very arguments posed here by SRHS. The EEOC countered that the defendant was an agent of the prospective employer. *Id*. at 683. The court recognized the fact that most cases construing agent clauses focus on whether an employer is subject to *respondeat superior* liability for the actions of its employees. *Id*. at 683-84. The court noted, however, that, outside the context of individual employee/agents, courts have imposed liability on the agent itself when, for example, the agent itself satisfies the coverage criteria for a "covered entity." *Id*. at 684 (citations omitted).

7

Accordingly, the court denied summary judgment as to the management company on the grounds that it could be sued as an agent of the entity that was to employ the plaintiff. *Id*.

Furthermore, as argued by the plaintiff, while *Grane Healthcare* involved the denial of summary judgment, courts have made clear that it is improper to dismiss such claims prior to developing the factual record in discovery:

> The overriding lesson from *Carparts* is that the issue of who is an "employer" will rarely be resolved on a motion to dismiss. . . . . [T]his assessment is highly fact-bound. Where a complaint alleges that a defendant is an employer or agent under the ADA, the allegation alone is typically sufficient to withstand dismissal. If a defendant contends that it is neither the employer nor agent, the wiser course is for the parties to engage in discovery, isolate undisputed and disputed facts, and present the issue as a matter of law based on a fully developed factual record.

*Brown v. Bank of Am., N.A.*, 5 F. Supp. 3d 121, 135 (D. Me. 2014) (finding that the plaintiff's complaint alleged facts sufficient to make the employer's employee benefits administrator the agent of her employer under Title I of the ADA).

The second amended complaint includes allegations that defendant SRHS is a "covered entity" under Title I of the ADA (doc. 28 ¶¶ 16-17). Further, the plaintiff alleges that Wabtec "ceded to SRHS all control over who would be employed in situations involving applicants with disabilities . . . " (*id.* ¶¶ 15-16). The plaintiff also specifically alleges that SRHS "significantly affects access of certain individuals to employment opportunities with Wabtec and other employers" (*id.* ¶ 16). Viewing the allegations in the second amended complaint in a light most favorable to the plaintiff and in view of the cases cited, the undersigned recommends that SRHS's motion to dismiss for failure to state a claim should be denied at this time.

*Disability*

Defendant SRHS next argues that the plaintiff's Title I and Title II claims should be dismissed because she fails to allege that she is disabled (doc. 37-1 at 10-11).

Specifically, SRHS argues that the plaintiff failed to allege any major life activities in which she is limited and failed to allege that her "medical conditions," scoliosis and diabetes, are disabilities (*id.*). However, the "actual disability" prong of the disability definition is only one of three parts of the definition of "disability." The ADA provides in pertinent part:

> (1) Disability
>
> The term "disability" means, with respect to an individual-
>
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C.A. § 12102(1).

SRHS further argues that the plaintiff's complaint fails because it "is premised on the fact that she can work without medical restrictions, and that she should not have had any medical restrictions placed on her" (doc. 37-1 at 11). However, as noted by the plaintiff, if she could not work she would not be a qualified individual with a disability. 42 U.S.C.. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."); *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001) ("One is within the ADA's protected class if one is 'a qualified individual with a disability.'") (quoting 42 U.S.C. § 12112).

The Fourth Circuit has made clear that the overuse of hypertechnical arguments regarding coverage as a disabled person is precisely why Congress enacted the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009:

> The . . . (ADAAA) was intended to make it "easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). The regulation clarifies that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and

9

> whether discrimination has occurred, **not whether the individual meets the definition of disability**." *Id*. "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub.L. No. 110–325, § 2(b)(5) (2008). In enacting the ADAAA, Congress abrogated earlier inconsistent caselaw. *Summers*, 740 F.3d at 331.

*Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (emphasis added).

In her second amended complaint, the plaintiff alleges she has both diabetes and scoliosis (doc. 28 ¶ 11). She further contends that she falls within all three prongs of the disability definition when she claims that the defendants "discriminated against Plaintiff because of her disability and/or Defendant's perception of Plaintiff's conditions and/or Plaintiff's record of impairments, namely her diabetes and scoliosis" (*id.* ¶ 25). Based upon the foregoing, the undersigned finds that the plaintiff has sufficiently pled that she has a disability as defined by the ADA.

***Title II***

Title II of the ADA provides that "no qualified individual with a disability shall . . . be subjected to discrimination by a [public] entity." 42 U.S.C. § 12132. In the second amended complaint, the plaintiff alleges that SRHS is a "'public entity' for purposes of Title II of the ADA" (doc. 28 ¶ 17 (quoting 42 U.S.C. § 12131(1)(B))) and that the alleged actions of SRHS violate Title II (*id.* ¶ 27).

Defendant SRHS first argues that "to the extent Plaintiff has retained her claim for employment discrimination under Title II, that claim must be dismissed" (doc. 37-1 at 11-12). In her response, the plaintiff notes that she has "already clarified that she was not suing SRHS for an employment claim under Title II" and that the purpose of the second amended complaint "was to eliminate any purported claim that she was" (doc. 39 at 12). Accordingly, this portion of the motion to dismiss is moot.

Defendant SRHS further argues that the plaintiff has failed to "clearly delineate which of her allegations relate to her claim under Title II" (doc. 37-1 at 12). To

establish a *prima facie* case under Title II of the ADA, the plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir.2004) (citing cases). Here, the plaintiff alleges that she has diabetes and scoliosis and that defendant SRHS, which she claims is a public entity, discriminated against her by using the pre-employment medical exam to screen her out based on her impairments, its perception of her impairments, and/or her record of such impairments (doc. 28 ¶¶ 11, 23, 25).

SRHS further argues that the Title II claim fails "because the service provided by [SRHS] was not a public service but instead a private service provided pursuant to private agreement" (doc. 37-1 at 14). In *Bacon v. city of Richmond, Va.,* 475 F.3d 633 (4th Cir. 2007)*,* the Fourth Circuit Court of Appeals stated:

> Title II prohibits discriminating against disabled persons in two ways. The provision first bars the exclusion of otherwise qualified persons with a disability from participating in or "receiving the benefits of the services, programs or activities of a public entity." [42 U.S.C. ] § 12132. It also bars a public entity from discriminating against an individual on the basis of disability. *Id*. To repeat, to prevail under Title II of the ADA plaintiffs must show either "that [they] w[ere] excluded from participation in, or denied the benefits of, a program or service offered *by a public entity*, or subjected to discrimination by *that entity*." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir.2005) (emphasis added).

*Id.* at 639.

Here, the plaintiff has alleged that defendant SRHS, a public entity, discriminated against her by using the pre-employment medical exam to screen her out based on her impairments, its perception of her impairments, and/or her record of such impairments (doc. 28 ¶¶ 11, 23, 25). The undersigned recommends denial of the motion

11

to dismiss this claim because the plaintiff has stated a Title II claim that is plausible on its face.

*Motion to Stay*

Based upon the foregoing recommendation as to defendant SRHS's motion to dismiss, the undersigned further recommends that the motion to stay discovery pending resolution of the motion to dismiss be denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, defendant SRHS's motions to dismiss and to stay (docs. 37, 38) should be denied.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

September 8, 2016
Greenville, South Carolina